# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION
# CIVIL ACTION NO. 4:20-CV-00205-HBB

**TRACY VAUGHT**                                                                                    **PLAINTIFF**

**V.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**[1]
**SOCIAL SECURITY ADMINISTRATION**                                         **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Tracy Vaught ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both Plaintiff (DN 17) and Defendant (DN 21) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 15). By Order entered May 28, 2021 (DN 16), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Insurance Benefits on April 14, 2018 (Tr. 12, 164-70). Plaintiff alleges to have become disabled on October 15, 2014, as a result of type 2 diabetes, neuropathy in both feet, high blood pressure, high protein in urine, acid reflux, high cholesterol or triglycerides, depression, anxiety, and persistent difficulty falling or staying asleep (Tr. 12, 62, 77, 184). These claims were initially denied on October 24,[2] 2018 and were again denied upon reconsideration on January 28,[3] 2019 (Tr. 12, 74-75, 90-92). Thereafter, Plaintiff filed a written request for a hearing before an administrative law judge (Tr. 12, 109-10).

Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Paducah, Kentucky on September 30, 2019 (Tr. 12, 31-33). Virtually present at the hearing from Madisonville, Kentucky was Plaintiff and his attorney Sara Martin Diaz (Id.). During the hearing, Tina Stambaugh testified as a vocational expert (Id.).

On November 26, 2019, the ALJ rendered a decision that Plaintiff was not disabled pursuant to the five-step sequential process (Tr. 12-24). The ALJ noted that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2019 (Tr. 14). At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from October 15, 2014 (alleged onset date) through June 30, 2019 (date last insured) (Id.). At the

---

2  The ALJ's opinion listed the date of the initial denial as October 29, 2018 (Tr. 12). However, the Disability Determination and Transmittal documents, as well as the date accompanying the signature of the Disability Adjudicator/Examiner, list the date as October 24, 2018 (Tr. 74, 75). When faced with this conflict, the Court will use the October 24 date.

3  The ALJ's opinion listed the date of the reconsideration denial as January 31, 2019 (Tr. 12). However, the Disability Determination and Transmittal documents, as well as the date accompanying the signature of the Disability Adjudicator/Examiner, list the date as January 28, 2019 (Tr. 91, 92). When faced with this conflict, the Court will use the January 28 date.

second step, the ALJ determined Plaintiff has the following severe impairments: spinal disorder, obesity, peripheral neuropathy associated with diabetes mellitus, and diabetes mellitus (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 16).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except for the following limitations: Plaintiff can sit for 30 minutes at a time and stand for 30 minutes at a time at the workstation in an 8 hour workday; occasionally push and pull with the lower extremities; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; occasionally be exposed to vibration, moving mechanical parts, unprotected heights, and dangerous machinery; and frequently reach overhead and in all other directions with the upper extremities bilaterally (Tr. 18). The ALJ found Plaintiff, through the date last insured, was unable to perform any past relevant work (Tr. 22).

After this finding, the ALJ proceeded to the fifth step, where the ALJ considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff, through the date last insured, was able to perform other jobs that exist in the national economy (Tr. 23). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, at any time from October 15, 2014, the alleged onset date, through June 30, 2019, the date last insured (Tr. 20).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 159-60). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenge to Finding No. 5

1. Arguments of the Parties

As Plaintiff's first two arguments are intertwined with the RFC analysis, the Court will review them jointly. Plaintiff contends that "[t]he ALJ failed to rely on substantial evidence when dismissing the medical opinion of [Plaintiff]'s treating provider found at Exhibit 23" (DN 17-1 PageID 1357). *See also* (Tr. 1276-82). Plaintiff believes the opinion of Cheri Fogle, APRN, should have been awarded persuasive weight and her RFC findings should have been considered (DN 17-1 PageID 1357). Plaintiff cites to 20 C.F.R. § 404.1527 to argue that "[t]he opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician" and "the opinion of the treating physician must be given 'controlling weight' . . ." (Id.). Additionally, Plaintiff argues that "[t]he ALJ failed to recognize the limiting effects of [Plaintiff]'s severe conditions" (Id. at PageID 1352). Instead, Plaintiff avers that he "should have been limited to sedentary or less than sedentary work" (Id.). Plaintiff states that his medical documentation shows that his diabetes is not under control, complains of lower extremity pain, and complains of burning and tingling in his feet (Id. at PageID 1354) (citing Tr. 1079-1119, 1258-78). Plaintiff also takes issue with the ALJ's analysis, asserting that the ALJ violated SSR 16-3p, by failing to "adequately consider the reasons he was forced to take a less effective medicine to treat his diabetes" (Id.). Moreover, Plaintiff argues that the documentation and his testimony at the administrative hearing, illustrates his instability when standing and experiences pain when standing or walking (Id. at PageID 1355). Finally, Plaintiff states that Plaintiff would have been found disabled pursuant to a Grid Rule finding if he had been found capable of sedentary work (Id. at PageID 1356).

Defendant disputes Plaintiff's argument by asserting that APRN Fogle's opinion was unpersuasive because it was not supported by the record and was inconsistent with the medical evidence (DN 21 PageID 1385). Defendant notes that Plaintiff's claims are centered upon the wrong regulations, with 20 C.F.R. § 1520c being the applicable regulation as Plaintiff's application was filed after March 27, 2017 (Id. at PageID 1386). Next, Defendant maintains that the ALJ is required to articulate their consideration for supportability and consistency of an opinion but is not required to do so for the other factors (Id. at PageID 1387). As for the RFC, Defendant argues that "[t]he ALJ's determination was not only consistent with the state agency physicians who concluded that Plaintiff could perform a limited [] of light work but it was more restrictive than that proposed by those physicians" (Id. at PageID 1379). Defendant proffers that the ALJ detailed Plaintiff's relevant treatment history, the opinion evidence and prior administrative medical findings, the laboratory findings, and Plaintiff's statements and complaints (Id. at PageID 1379-82). Finally, Defendant contends that the ALJ did not violate SSR 16-3p, contrary to Plaintiff's argument, as the ALJ acknowledged that Plaintiff's insurance stopped paying for Trulicity, Plaintiff was working with his provider to return to the medication, and "the ALJ did not base her determination on Plaintiff's failure to seek or comply with treatment" (Id. at PageID 1383).

2. Discussion

The RFC finding is the administrative law judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). The administrative law judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).

Contained in this determination is an analysis of the medical opinions in the record. Defendant has correctly noted which regulations are applicable. Because Plaintiff filed his application after March 27, 2017, the new regulations for evaluating medical opinions are applicable (Tr. 12, 164-70). The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," in the record, even if it comes from a treating medical source. 20 C.F.R. § 404.1520c(a). Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The two most important are supportability and consistency. 20 C.F.R. § 404.1520c(a) and (b)(2). Further, the regulation requires administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

Notably, under the regulations, administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). An administrative law judge will articulate how they considered the other factors in paragraphs (c)(3) through (c)(5) of the regulation when the administrative law judge finds that two or more medical opinions about the same issue are both equally well supported and consistent with the record but are not exactly the same. 20 C.F.R. § 404.1520c(b)(3).

Starting with APRN Fogle, the referenced documents are a five-page physical RFC questionnaire (Tr. 1276-80). In it, APRN Fogle noted a diagnosis of diabetic neuropathy with a "fair" prognosis (Tr. 1276). However, Plaintiff was noted to experience pain or other symptoms constantly which would be "severe enough to interfere with attention and concentration needed to perform even simple work tasks" (Tr. 1277). Additionally, Plaintiff would be "incapable of even 'low stress' jobs," able to stand for 5 minutes at one time before needing to sit down or walk around, able to sit for 45 minutes before needing to stand up, only able to sit or stand/walk for less than 2 hours total in an 8-hour workday (Tr. 1277-78). Finally, APRN Fogle stated that Plaintiff would need the ability to shift positions at will and take unscheduled breaks during an 8-hour workday (Tr. 1278).

The ALJ found APRN Fogle's opinion to be "not persuasive" because "it is not supported by the record" (Tr. 21). The ALJ went on to discuss the record in more depth:

> Treatment records generally showed normal gait, and no tenderness of the neck, thoracic spine, or lumbar spine, normal range of motion, normal coordination, no focal deficits, and no edema (Exs. 4F/67, 73, 77; 11F/3, 10, 19, 137; 13F/7). The claimant denied symptoms of myalgia and neck pain on the record (Ex. 11F/2). It is also inconsistent with a consultative examination, which showed normal strength, normal range of motion, and normal gait with no use of an assistive device (Ex. 14F). Further, the record indicates the claimant's back pain and neck pain with radiculopathy was 70 percent improved with medication (Ex. 19F/6). In addition, the record indicated his diabetes was stable and his neuropathic pain was largely controlled with medication (Exs. 4F/12, 15, 21, 22, 70; 19F/13). The claimant was also prescribed custom orthotics, which has helped with his forefoot pain (Ex. 19F/13).

(Id.).

Looking to the explanation above, the ALJ properly followed the new regulations by determining the persuasiveness of APRN Fogle's opinion, and the reasons proffered by the ALJ align with finding the opinion inconsistent and unsupported—the two factors the ALJ was required to consider. 20 C.F.R. § 404.1520c(a) and (b)(2). The ALJ was also not required to articulate how they considered the three other factors, as there were not two or more medical opinions about the same issue are both equally well supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)-(3). Moreover, Plaintiff asserts that "[a]n ALJ cannot speculate and make independent medical findings" (DN 17-1 PageID 1358). However, there is a difference between an administrative law judge having the authority to make a step three determination based upon the medical evidence and an administrative law judge "substitut[ing] his own medical judgment for that of a treating physician" to make independent medical findings. *See* Rhodes v. Comm'r of Soc. Sec., 2019 U.S. Dist. LEXIS 193031, at *25 (W.D. Ky. Mar. 7, 2019) (quoting Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009)). Indeed, "ALJs must not succumb to the temptation to play doctor[.]" Id. (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Looking to the medical evidence and the ALJ's opinion, it is clear that the ALJ in the present matter did not succumb to this temptation. As noted above, the ALJ discussed APRN Fogle's opinion, determined the persuasiveness of the opinion, and cited medical documentation that illustrated the inconsistency and lack of supportability. Therefore, the ALJ's determination about APRN Fogle's opinion is supported by substantial evidence and uses the applicable law. Plaintiff is not awarded any relief under this challenge.

As for the RFC determination, the ALJ noted that Plaintiff reported being diabetic and was showing signs of neuropathy prior to the diagnosis (Tr. 18). The ALJ explicitly discussed how

Plaintiff takes Gabapentin for his neuropathy and his blood sugars were controlled while using Trulicity "but his insurance stop[ped] paying for this medication" (Id.). However, "[h]e reported that he is working with his provider to get back on the medication" (Id.). Later in the determination, the ALJ found:

> The claimant was prescribed oral medication, including Trulicity, Januvia, Gabapentin, and Lyrica, to treat his symptoms (Exs. 4F/21; 10F/34). Treatment records indicated his diabetes was stable and his neuropathic pain was largely controlled with medication (Exs. 4F/12, 15, 21, 22, 70; 19F/13). The claimant was also prescribed custom orthotics, which has helped with his forefoot pain (Ex. 19F/13). Despite the claimant's allegations, he also denied symptoms on the record, including hypoglycemia, blurred vision, chest pain, fatigue, foot ulcerations, polydipsia, polyphagia, polyuria, retinopathy, visual change, weakness, and weight loss (Exs. 4F/2, 5, 12, 15, 67; 13F/6; 17F/6).

(Tr. 19).

Additionally, the ALJ referenced Plaintiff's daily living activities, which "undermine[d] his allegations of disabling symptoms" (Tr. 20). Specifically, Plaintiff "reported no problems managing his personal care (Ex. 5E/3). He also reported he was able to prepare simple meals, perform household chores such as mowing with a ride lawn mower, laundry, some household repairs, and take out the trash, shop in stores, and drive (Ex. 5E/4, 5; 4F/66). In December 2016, the claimant reported he cleaned out his garage (Ex. 4F/4)" (Id.).

Based upon the above information, the ALJ's RFC analysis is supported by substantial evidence, especially considering that the ALJ discusses the evidence Plaintiff purports that the ALJ omitted. Moreover, the ALJ did not violate SSR 16-3p, as the ALJ specifically noted medication difficulties as a result of Plaintiff's insurance company, but the ALJ did not use this

issue as a means for finding Plaintiff subjective complaints to not be consistent with the medical evidence in terms of intensity, persistence, and limiting effects. Therefore, the ALJ's RFC determination is supported by substantial evidence and comports with applicable law.

Finally, for Grid rulings, when the ALJ's findings concerning a claimant's age, education, previous work experience and RFC coincide with all of the criteria of a particular Grid Rule within the medical-vocational guidelines, the ALJ may rely on that Grid Rule to satisfy his burden. 20 C.F.R. § 404.1569; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). However, if the ALJ's findings do not coincide with all the criteria, then the ALJ is limited to using the Grid Rule as a framework in the decision making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Hum. Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Here, the ALJ's RFC, which is supported by substantial evidence, found Plaintiff to be limited to a reduced range of light work (Tr. 18). As a result, the ALJ's findings did not coincide with *all* of the criteria of the Grid Rules. Thus, the ALJ is limited to only using the Grid Rules as a framework. Therefore, it is unfounded for the ALJ to have erred by not utilizing Grid Rules 201.09 or 201.10.

Plaintiff's RFC and Grid arguments amount to a request for this Court to re-evaluate the evidence and craft a new RFC. However, that is not this Court's role. Where substantial evidence supports the ALJ's decision, a court is obliged to affirm. See Siterlet v. Sec'y of Health & Hum. Servs., 823 F.2d 918, 920 (6th Cir. 1987). "Substantial evidence exists when a

reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993) (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). As discussed above, the ALJ's RFC determination is supported by substantial evidence, even if Plaintiff could view the evidence in a different light. As such, the Court is obliged to affirm the ALJ's finding. Therefore, Plaintiff is awarded no relief under this challenge.

Challenge to Finding No. 10

1. Arguments of the Parties

Plaintiff's final argument takes issue with whether there is a sufficient number of jobs available for Plaintiff to perform in the national economy (DN 17-1 PageID 1359-62). Plaintiff contends that "[s]ubstantial evidence does not support the [vocational expert] testimony . . . as the jobs proffered by the [vocational expert] are not compatible with a limited ability to perform this work and their job numbers are not sufficient" (Id. at PageID 1360). Plaintiff avers that the job descriptions in the DOT of the three identified jobs have not been updated since the early 1990s and are now obsolete (Id.). "As such, the [vocational expert] should have supplemented her testimony with a more up to date and reliable source, like O-Net" (Id.). "Further, the [vocational expert] did not engage in any further analysis to quality what impact the sit/stand option would have on job numbers[,]" and instead, the vocational expert simply cut the number of available jobs in half "to accommodate that qualification" (Id.). Additionally, Plaintiff posits that the number of jobs available in the national economy are not sufficient to be qualified as "significant" (Id. at PageID 1361).

13

Defendant responds to Plaintiff's claim by contending that Plaintiff did not object or cross-examine the vocational expert about the job descriptions, O*Net, or potential obsolescence during the administrative hearing (DN 21 PageID 1389-90). Defendant relies upon a recent Sixth Circuit case to assert that O*Net is not reliable for the social security realm (Id.) (citing O'Neal v. Comm'r of Soc. Sec., 799 F. App'x 313, 316-18 (6th Cir. 2020)). As for the sit/stand limitation contentions, Defendant explains that the vocational expert addressed the DOT's lack of consideration for the sit/stand limitations and instead relied upon her experience in the field (Id. at PageID 1391-92). Defendant again cites to the Sixth Circuit in noting that it was correct for the ALJ to accept the vocational expert's testimony, even with the DOT not addressing sit/stand limitations (Id.) (quoting Baranich v. Barnhart, 128 F. App'x 481, 486 n.3 (6th Cir. 2005)).

2. Discussion

The burden of proof does not shift to the Commissioner to establish Plaintiff's ability to work until the fifth step of the evaluation. Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). At the fifth step, it is the Commissioner's burden to show that there exists a significant number of jobs in the local, regional, and national economies that Plaintiff can perform, given his RFC. *See* Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy which plaintiff can perform considering the combination of his/her limitations. *See* Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Davis v. Sec'y of Health & Hum. Servs., 915 F.2d 186, 189 (6th Cir. 1990); Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987). In making a determination at step

five of the sequential evaluation process, the ALJ must consider a claimant's age, education, past relevant work experience, and RFC. 20 C.F.R. § 404.1520(f).

A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the local, regional, and national economies, Bradford v. Sec'y, Dep't. of Health & Hum. Servs., 803 F.2d 871, 874 (6th Cir. 1986) (*per curiam*), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the claimant's physical and mental impairments. Varley, 820 F.2d at 779. If the ALJ comes forward with evidence of job availability, the claimant must rebut that he can perform the identified job. Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). The hypothetical question is not erroneous where at least one doctor substantiates the information contained therein. Hardaway v. Sec'y of Health & Hum. Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (*per curiam*). Moreover, there is no requirement that the ALJ's hypothetical question to the vocational expert reflect the claimant's unsubstantiated complaints. Id.

Finally, the Sixth Circuit, albeit in an unpublished opinion, previously cautioned that "*common sense dictates*" when job descriptions in the DOT "appear obsolete, a more recent source of information should be consulted." Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added). Several district courts in the Sixth Circuit followed Cunningham and remanded matters to the Commissioner when the vocational expert's reliance on potentially obsolete job descriptions from the DOT raised sufficient doubt whether substantial evidence supported the ALJ's determination at the fifth step. *See e.g.* Wright v. Berryhill, No. 4:18-CV-00021, 2019 WL 498855, at *9 (W.D. Ky. Feb. 8, 2019); Westmoreland v. Berryhill, No. 3:17-cv-

00096, 2018 WL 1522118, at *4 (S.D. Ohio Mar. 28, 2018); Rollston v. Comm'r of Soc. Sec., No. 1:16-CV-168, 2016 WL 6436676, at *4 (W.D. Mich. Nov. 1, 2016). Other district courts within the Sixth Circuit criticized Cunningham's reasoning and declined to follow its holding. *See e.g.* Kidd v. Berryhill, No. 5:17-CV-420-REW, 2018 WL 3040894, at *7-10 (E.D. Ky. June 19, 2018); Montano v. Comm'r of Soc. Sec., No. 1:13-cv-70, 2014 WL 585363, at *15 (S.D. Ohio Feb. 14, 2014); Belew v. Astrue, No. 2:11-107-DCR, 2012 WL 3027114, at *9-10 (E.D. Ky. July 24, 2012).

In a recently issued unpublished order, the Sixth Circuit attempted to resolve the apparent confusion among some of the district courts. O'Neal v. Comm'r of Soc. Sec., 799 F. App'x 313, 316-18 (6th Cir. 2020). Because the regulations continue to recognize the DOT as a source of reliable information and the claimant did not to cross-examine the vocational expert about the DOT job descriptions when he had the opportunity, the Sixth Circuit held the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that the claimant was able to perform work that existed in significant numbers in the national economy. Id.

In the present case, the ALJ considered Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony to list three jobs which Plaintiff could perform in the national economy (Tr. 22-23). These jobs are inspector (DOT # 529.687-114), with 60,000 jobs nationally; packer (DOT # 559.687-074), with 180,000 jobs nationally; and mail room clerk (DOT # 209.687-026), with 70,000 jobs nationally (Tr. 23). Thereafter, the ALJ opined that, pursuant to SSR 00-4p, she found the vocational expert's testimony to be consistent with the information contained in the DOT (Id.).

Beginning with Plaintiff's obsolescence argument, Plaintiff had, and indeed took, the opportunity to cross-examine the vocational expert during the administrative expert (Tr. 59).

During this examination, Plaintiff discussed whether the availability of jobs would remain if there were additional or changed limitations as to the hypothetical person's ability to handle and finger and absenteeism (Id.). No discussion occurred regarding the DOT, O*NET, the vocational expert's reliance on the DOT over O*NET, or the alleged obsolescence of the jobs (Id.). Thus, based upon the holding in O'Neal, Plaintiff has forfeited her obsolescence argument.

While Plaintiff cites three cases in which the undersigned remanded proceedings to the Commissioner for further proceedings (DN 17-1 PageID 1361), all three of those cases pre-date O'Neal. As the Sixth Circuit has provided more clarity on the applicable law following Cunningham, Plaintiff's use of the undersigned's cases is unpersuasive.

Plaintiff's other argument, whether there are a significant number of jobs in the national economy, is equally unpersuasive. Plaintiff contends that the estimate job totals (60,000 jobs for inspectors; 180,000 jobs for packers; and 70,000 jobs for mail room clerk) are not sufficient (Id.). Precedent, however, details that the numbers indicated for the three jobs are more than sufficient. *See e.g.*, McCormick v. Sec'y of Health & Hum. Servs., 861 F.2d 998, 1000, 1002 (6th Cir. 1988) (4,000 to 5,000 jobs in Michigan); Hall v. Bowen, 837 F.2d 272, 274 (6th Cir. 1988) (1,350 to 1,800 jobs in the nine county area of Dayton, Ohio); *accord* Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479-80 (9th Cir. 1989) (citing Hall) (1,255 jobs in Los Angeles/Orange County); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (citing Hall) (500 jobs in St. Louis area); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs locally, 1,600 jobs in Georgia, and 80,000 nationally). It is for the Commissioner to evaluate the reliability of the vocational expert's testimony and to determine what constitutes a significant number. *See* Hall, 837 F.2d at 275.

The ALJ considered this information and found the 310,000 jobs in the national economy to be a significant number (Tr. 23-24). As the Sixth Circuit previous discussed:

> [A]n ALJ must tailor the determination of what is significant to the facts of each claimant's case is why we have said that ALJs "should consider many criteria in determining whether work exists in significant numbers." *Hall v. Bowen*, 837 F.2d at 275. It is why we have said "we cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number." *Id.* And it is why substantial evidence review applies. *See id.*; *see also* 42 U.S.C. § 405(g). Under that standard, the ALJ did not commit a reversible error. For substantial evidence supports the conclusion that Taskila could perform at least two jobs that are meaningfully available locally (200 jobs) and nationally (6000).

Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 906 (6th Cir. 2016). Therefore, the ALJ's determination about whether 310,000 jobs in the national economy is significant is supported by substantial evidence.

Finally, as for Plaintiff's argument about the lack of consideration for sit/stand limitations, this argument does not lead to remand or reversal. The vocational expert, after being asked whether her testimony was consistent with the DOT, replied, "It has been consistent with the DOT with the exception of my opinion regarding jobs at the light level that could be performed with alternating sitting and standing and a reduction of numbers based upon that . . ., as you know, those are not characteristics of work outlined in the DOT. My opinion regarding those issues is based on my experience in the field with employers" (Tr. 58). Plaintiff did not cross-examine the vocational expert about her experience in the field or how her experience led to the conclusion of reducing the number of jobs in the national economy (*see* Tr. 59). Defendant's cited case clearly notes that a claimant "is therefore incorrect to argue that the ALJ could not include a sit/stand

option when such an option is not indicated in the DOT, as the DOT is only one source to be used in assessing the availability of jobs for the claimant." Baranich v. Barnhart, 128 F. App'x 481, 486 n.3 (6th Cir. 2005). Moreover, the Sixth Circuit has, more recently, addressed that the DOT does not discuss sit/stand limitations but has still found that a vocational expert's testimony about this aspect "supplemented, rather than conflicted with, DOT job descriptions." Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 364 (6th Cir. 2014) (citing Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 605 (6th Cir. 2009) (finding no conflict where a vocational expert testified about an occupation that did not specifically appear in the DOT); Zblewski v. Astrue, 302 F. App'x 488, 494 (7th Cir. 2008) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT.")). This finding also appears to be consistent with the vocational expert's testimony in this case. As the DOT does not address sit/stand limitations, the vocational expert's reliance on her experience in the field appears to supplement, rather than conflict with, the DOT. Thus, Plaintiff's argument is unpersuasive.

Therefore, for the reasons detailed above, the ALJ's step five analysis is supported by substantial evidence and comports with applicable law.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ

followed the applicable law. (Id.). After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenge.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

H. Brent Brennenstuhl
United States Magistrate Judge

March 29, 2022

Copies: Counsel of Record